# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

## CIVIL NO.  3:02CV66
## (3:97CR22-9)

| | | |
|---|---|---|
| IVEY WALKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Government's response to the Order of September 8, 2005.  By virtue of that Order, most of the Petitioner's claims were dismissed and the Government was asked to respond to the remainder.  The Court now considers the remaining claims raised by the Petitioner in his collateral attack pursuant to 28 U.S.C. § 2255.

The Petitioner argues the undersigned erred at trial by failing to instruct the jury that it must make a determination of the specific conspiracy with which the Petitioner was involved.  He also claims his attorney was ineffective for failing to request such a charge.

The jury was instructed that in order to find the Petitioner guilty of the charge of conspiracy to possess with intent to distribute controlled substances, they would have to find that each element had been proven beyond a reasonable doubt. Those elements were defined as:

> (1) [T]he conspiracy described in Count IV . . ., that is, an agreement with others to commit acts in violation of the Federal Controlled Substances Act[,] was willfully formed and was existing at the time alleged. . . . (2) [T]he [Petitioner] willfully became a member of that conspiracy. (3) [T]he object of that conspiracy was to violate the Federal Controlled Substances Act by way of possession with intent to distribute one or more of the following; cocaine and/or cocaine base, . . . and/or heroin and/or marijuana. . . . (4) [T]he [Petitioner] . . . did these acts knowingly and intentionally.

**Transcript of Jury Instructions, filed October 26, 2001, at 32-33.** The jury was, therefore, clearly instructed that the conspiracy with which the Petitioner stood charged was one to violate the Controlled Substances Act.

However, the Petitioner argues that there was no instruction concerning multiple conspiracies. Contrary to this argument, a single versus multiple conspiracy instruction was given to the jury. The jury was instructed that: (1) the Government had to prove beyond a reasonable doubt that the Petitioner was a member of this particular conspiracy and did not withdraw from it, ***id.***, **at 37**; (2) the Government had to prove that this particular conspiracy existed,

*id*. (**"Proof of separate or independent conspiracies is not sufficient."**); (3) in order to determine if this particular conspiracy was the one in which the Petitioner was involved, the jury was to consider evidence of master or overall goals thereof and the complexity of the conspiracy, *id*.; and (4) "If the evidence in the case shows that the [Petitioner] was a member of some conspiracy but not the conspiracy [charged] in the indictment, you must acquit the defendant." ***Id.*, at 38.** The Court, therefore, rejects the argument that a single versus multiple conspiracy instruction was not given. Moreover, to the extent the Petitioner may be attacking the sufficiency of that instruction, the instruction given is virtually identical to the standard instruction. ***See, e.g.*, 2 O'Malley, Grenig, Lee, *Federal Jury Practice & Instructions*, § 31.09 (5th ed. 2000).**

Although not clear, it is possible that the Petitioner is claiming the conspiracy charge in the indictment was duplicitous because it charged a conspiracy involving more than one type of controlled substance. This type of argument has been rejected by the Fourth Circuit.

> The Supreme Court has expressly rejected the contention that such a count, containing allegations of a single conspiracy to commit two or more separate crimes, is duplicitous. The Court reasoned, "[t]he allegation in a single count of conspiracy to commit several

crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects."

***United States v. Marshall*, 332 F.3d 254, 262 (4th Cir.), *cert. denied*, 540 U.S. 1024 (2003) (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)).** Since the indictment was not duplicitous, the undersigned did not err and counsel could not have been ineffective by failing to object to it.

Next, the Petitioner claims the jury instructions concerning the charge of conspiracy to money launder were defective because the jury was not told to make a finding of specific conduct attributable to the Petitioner. However, there is no requirement that an overt act be proved by the Government in order to sustain a conviction for conspiracy to money launder pursuant to 18 U.S.C. § 1956(h). ***Whitfield v. United States*, 543 U.S. 209 (2005); *United States v. Alerre*, ___ F.3d ___, 2005 WL 3213303 (4th Cir. 2005).** As a result, the Petitioner's arguments that the Court erred and counsel was ineffective are both rejected.

The Petitioner also argues that the Court failed to instruct the jury that their verdict must be unanimous and, as a result, his attorney was ineffective by not insisting on such an instruction. Again, the record shows that the jury was instructed that "a verdict is not a verdict until it is unanimous." **Trial**

**Transcript,** *supra*, **at 52.** To the extent that he claims the Court should have instructed the jury that they must find each element of each offense unanimously, the jury was instructed that in order to find the Petitioner guilty of the charge under consideration, they must find that the Government had proved each element of the crime beyond a reasonable doubt. *Id.***, at 39, 47.** This is sufficient to satisfy the Petitioner's Sixth Amendment rights. **United States v. Sarihifard, 155 F.3d 301, 309-10 (4th Cir. 1998) ("Conviction of an offense requires a finding of guilt beyond a reasonable doubt as to each and every element of the offense charged in the indictment.").** A jury is presumed to follow the instructions provided to them. **United States v. Francisco, 35 F.3d 116, 119 (4th Cir. 1994);** *accord***, Alerre,** *supra***, 2005 WL 3213303, at \*\*7 (citing Jones v. United States, 527 U.S. 373, 394 (1999)).** And, to the extent that the Petitioner may be claiming that the jury should have unanimously found which acts constituted his involvement in the conspiracy, he fares no better.

> A general unanimity instruction [such as that given here] is usually sufficient to support a conviction [for conspiracy]. Because of the nature of a conspiracy charge, when the jury agrees that the defendant agreed to commit a crime, "all jurors do not have to agree about which offense the defendant personally intended to commit."

***United States v. Forbes***, **1 Fed. Appx. 125, 126-27 (4th Cir. 2001) (quoting *United States v. Narviz-Guerra*, 148 F.3d 530, 534-35 (5th Cir. 1998)) (other citations omitted).** And, when an indictment charges the conspiracy to commit several offenses, as in this case involving a conspiracy to distribute more than one type of controlled substance, it is not error to give a general unanimity instruction. ***United States v. Dillman***, **15 F.3d 384, 391-92 (5th Cir. 1994).** "[W]hen twelve jurors agree that a defendant agreed to commit [the] crime [of conspiracy], all jurors do not have to agree about which offense the defendant personally intended to commit. There need be only one conspiracy to encompass the particular charged offense." ***Narviz-Guerra,*** **at 535.** Since the undersigned committed no error, the Petitioner's claim of ineffective assistance must also fail. Moreover, even if there had been error, the Petitioner has not shown that any such error substantially affected the outcome of the proceedings because the evidence of his guilt was overwhelming. ***United States v. Myers***, **280 F.3d 407, 414 (4th Cir. 2002).**

The next assignment of error is that the undersigned failed to poll the jury when the verdict was rendered and that failure was ineffective assistance by his attorney. "Absent some indication that the jury's verdict was not unanimous, counsel did not perform deficiently by declining to poll the jury."

***United States v. Ambo***, **64 Fed. Appx. 416 (5th Cir.),** ***cert. denied***, **540 U.S. 920 (2003) (citing** ***United States v. Costa***, **691 F.2d 1358, 1363-64 (11th Cir. 1982)).**  The Petitioner has offered no explanation as to why polling was necessary in his case.  Instead, he speculates that the verdict was not unanimous and thus, counsel was ineffective by failing to request a jury poll. ***Woods v. United States***, **567 F.2d 861 (8th Cir. 1978) (Allegations which are based on mere speculation are insufficient.);** ***accord, Romano v. United States***, **460 F.2d 1198 (2d Cir. 1972);** ***Washington v. United States***, **291 F.Supp.2d 418 (W.D. Va. 2003) (petitioner's speculation is insufficient).** And, since the undersigned had no obligation to poll the jury in the absence of a request, no error was committed by failing to *sua sponte* poll the jury. ***United States v. Shepherd***, **576 F.2d 719, 724 (7th Cir. 1978).**

It is undisputed that the Petitioner's attorney did not join in the *Apprendi*[1] precursor arguments raised by counsel for co-defendant Willie Mackins.  This, the Petitioner argues, constitutes ineffective assistance of counsel.

---

[1]***Apprendi v. New Jersey***, **530 U.S. 466 (2000).**  In *Apprendi*, the Supreme Court held that other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proven beyond a reasonable doubt.

Because of the Petitioner's criminal history and the amount of drugs involved in the conspiracy, his United States Sentencing Guideline range of imprisonment was a life sentence. On direct appeal, his appellate counsel argued that *Apprendi* should have been applied to his case. The United States Fourth Circuit Court of Appeals held:

> The 1998 superseding indictment charged each of the three defendants with conspiracy to distribute an unspecified quantity of drugs, subjecting each to a maximum possible term of no more than twenty years imprisonment. The jury made no finding at all, let alone one beyond a reasonable doubt, of a specific threshold drug quantity; instead, the district court attributed amounts of illegal drugs to each defendant sufficient to subject each to life imprisonment. Virtually every circuit has held that "*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.*, charged in the indictment and proved to the jury beyond a reasonable doubt." For this reason, as the Government acknowledges, "the imposition of sentences above 20 years' imprisonment [on the drug conspiracy count] in this case was error." We thus have to determine if this error requires us to grant appellate relief to any of the defendants. . . . If a defendant has made a timely and sufficient *Apprendi* sentencing objection in the trial court, and so preserved his objection . . . , we must reverse unless we find this constitutional error harmless beyond a reasonable doubt[.] But if a defendant has failed to make a timely and sufficient *Apprendi* sentencing objection and, therefore, failed to preserve his objection in the trial court, we can correct the forfeited error only if it constitutes "plain error" under Fed. R. Crim. P. 52(b).
>
> . . .

> [C]lose review of the record reveals that, although [Petitioner]
> objected to the presentence report['s] drug quantity calculations,
> [he] never objected to the failure of the jury to find a specific drug
> quantity. [He] did not invoke *Jones v. United States*, 526 U.S.
> 227 (1999), or any other *Apprendi* precursor.
>
> . . .
>
> However, . . . Willie Mackins contended in his sentencing
> memorandum that the district court's imputation of a specific
> quantity of illegal drugs to him would "impact the offense level to
> an extent which depends on findings by the Court regarding . . .
> the presumption of innocence and burden of proof beyond a
> reasonable doubt, due to the "differential in sentencing ranging
> from a nominal fine to mandatory life' under the statute.". . .
> Moreover, Mackins invoked *Apprendi* precursors[.] Although not
> artful, we believe that Willie Mackins' sentencing memorandum
> thus stated a sufficient constitutional *Apprendi* objection to his
> sentence to preserve the objection for appellate review.

***United States v. Mackins*, 315 F.3d 399, 405-07 (4th Cir.), *cert. denied*, 539 U.S. 950 (2003) (quoting *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001)) (other citations omitted).** The Circuit also pointed out in a footnote that "despite our specific request that they do so, neither [Alonzo Mackins] nor Ivey Walker has been able to point to any place in the record in which one or both of them adopted any of Willie Mackins' objections at sentencing[.]" ***Id.*, at 407 n.4.**

The end result of the appeal was that the Circuit found the *Apprendi* error as to the Petitioner was plain error which affected his substantial rights but did not warrant judicial notice. ***Id.*, at 408.** Thus, the Petitioner's

conviction and sentence remained intact. As to Willie Mackins, however, the Circuit found the error was not harmless, vacated his sentence and remanded the matter with instructions to the undersigned as to the specific sentence to be imposed. *Id.* Of particular note, the Circuit instructed the undersigned to impose as to Counts 4 and 5, the same counts of which the Petitioner is convicted, consecutive sentences of 240 months, for a total sentence of 40 years. While 40 years is certainly a substantial sentence, it is most certainly less than life imprisonment.

Therefore, the issue on collateral review is whether sentencing counsel, who was different than either trial or appellate counsel, was ineffective in failing to join in the *Apprendi* precursor arguments raised by Willie Mackins' counsel. In its response to the Order, the Government notes decisions holding that an attorney's failure to forecast *Apprendi* and make arguments based on precursors to that decision is not ineffective assistance of counsel. This response, however, misses the point. Here, a co-conspirator's attorney made those very arguments but the Petitioner's attorney did not join in them for purposes of preserving an appellate issue. The undersigned has reviewed the objections to the presentence report and the transcript of the sentencing hearing. The characterization of the Fourth Circuit was accurate; counsel did

not join in the objections raised by counsel for Willie Mackins although the record indicates he was present in Court at the time.  **See, *e.g.*, Judgments in a Criminal Case as to Ivey Walker and Willie Mackins, filed November 16, 1999 (showing both were sentenced on October 8, 1999).**  In fact, during the sentencing hearing, the Petitioner's attorney acknowledged that he

> was at some disadvantage in the case in that I was not the trial attorney.  And I also have seen Your Honor slap down objections to the factual basis [all day], so I'm not going to get into an argument with the government as to what their perception of the evidence was for a variety of reasons, the least of which is I didn't hear it. . . . I think it would be a waste of my time and the Court's time for me to make the exact same arguments made previously.

**Sentencing Transcript, filed November 5, 2002, at 3.**  However, in this case, while it may have been a waste of time at the trial court level, had counsel joined in those arguments, even perfunctorily, the issue would have been preserved for appellate review.  And, had the issue been preserved for appellate review, it is certain that the Petitioner's case would have had the same result as that of Willie Mackins, that is, the Circuit would have confirmed his conviction but vacated his life sentence.

The Court is well aware of the precedent holding that an attorney is not ineffective in failing to anticipate a change in law.  **United States v. McNamara, 74 F.3d 514, 516 (4th Cir. 1996).**  The Fourth Circuit has held that "[i]n

*Kornahrens,*[2] we examined whether Kornahrens' trial counsel was constitutionally ineffective for failing to preserve an issue at trial based *merely* on the Supreme Court's grant of *certiorari* in a case which raised the issue."

*Id.* **(emphasis and footnote added).**  Here, however, the argument is not based "merely" on the fact that the Supreme Court had granted *certiorari*.  By the time of the Petitioner's sentencing hearing, Willie Mackins' attorney had

> contended in his sentencing memorandum that the district court's imputation of a specific quantity of illegal drugs to him would "impact the offense level to an extent which depends on findings by the Court regarding . . . the presumption of innocence and burden of proof beyond a reasonable doubt, due to the 'differential in sentencing ranging from a nominal fine to mandatory life' under the statute."  He also maintained that "any enhancement for . . . quantity of drugs . . . would violate the defendant's constitutional rights;" that "[w]henever the law makes conduct illegal, the government is required to prove the elements of this conduct which make it a crime;" and that "the un-enhanced statutory maximum of 20 years under 21 U.S.C. § 841(b)(1)(C) is applicable due to the aforementioned constitutional limitations."  Moreover, Mackins invoked the *Apprendi* precursors, *Jones* and *Almendarez-Torres v. United States*[.] . . .  As the Eleventh Circuit recently explained:
>
>> A defendant may be deemed to have made a constitutional objection if his objection invokes *Apprendi* . . . or *Jones* . . . [or] if he contends that the issue of drug quantity should go to the jury . . . .  Other potential constitutional objections include that an element of an offense was not proved, that the

---

[2]***Kornahrens v. Evatt***, 66 F.3d 1350 (4th Cir. 1995).

> judge cannot determine quantity, or that quantity must
> be proved beyond a reasonable doubt (and not by a
> preponderance of the evidence).
> We . . . have recognized similar objections as sufficient to preserve
> a claim for appellate review.

*Mackins*, 315 F.3d at 407 (quoting *United States v. Candelario*, 240 F.3d

1300, 1304 (11th Cir. 2001)) (other citations omitted).  From the record,

and the comments made by the Petitioner's attorney, it appears that he was

well aware of the objections raised by Willie Mackins' attorney but simply

declined to join in them, even for purposes of preserving an issue for appeal.

The Court provided the Government with an opportunity to respond in the

hopes that any question about this issue could be dispelled.  However, no

affidavit from sentencing counsel has been forthcoming.[3]

The undersigned is of the opinion that if sentencing counsel knew of the

precursor arguments raised by Willie Mackins' counsel but failed to preserve

the issue for his client, this would constitute ineffective assistance of counsel

warranting the *vacatur* of the sentence of life imprisonment.  This is a different

issue than failing to anticipate a change in the law; this is a matter of simply

joining in an argument already researched, formulated and presented by

---

[3]The Court acknowledges that the Government requested an affidavit
from sentencing counsel who failed to respond to that request.

another attorney which would have preserved an issue for appeal.[4]  And, it is
beyond dispute, based on the Fourth Circuit's opinion in *Mackins*, that the
failure to preserve the issue resulted in prejudice to the Petitioner.

The last issue raised by the Petitioner is also troubling; and, while the
Government did attach the affidavit of trial counsel, no response addressed the
issue which primarily troubled the Court.  On July 28, 1998, James Carson
filed a notice of appearance after having been retained to represent the
Petitioner.  On July 30, 1998, Mr. Carson appeared with the Petitioner at the
arraignment held on the superseding bill of indictment.  During that hearing,
the United States Attorney advised the Court that Mr. Carson had a conflict
with at least two unindicted co-conspirators.

> One is a Norman Williams who will testify directly against his client
> based upon the evidence as we now know it.  Another former client
> of Mr. Carson's is Gloria Jean Holloway.  She'll be testifying with
> regard to the conspiracy.  She is not being questioned about Ivey
> Walker yet.  I've informed Mr. Carson that I think these conflicts
> are insurmountable unless both Gloria Jean Holloway and Norman
> Williams waive any conflict, in addition to Mr. Walker waiving any
> conflict.  *The representation I have from Mr. Carson is that if
> these become insolvable or unsolvable conflicts, that Keith
> Stroud will be the attorney of record for trial[.]*

---

[4]The fact that sentencing counsel apparently ignored the Government's
request for an affidavit regarding this issue does not bode well.

**Transcript of Arraignment before the Honorable Carl Horn, III, United States Magistrate Judge, filed August 28, 2003, at 2-3 (emphasis added).**  The Magistrate Judge inquired whether Mr. Carson worked in the same office as Mr. Stroud and was assured that was the case.  *Id.*  The Magistrate Judge then advised the Petitioner as follows:

> [Y]our lawyer represented witnesses, at least one witness and maybe two witnesses against you if you were to go to trial.  And obviously Mr. Carson would have a hard time cross examining someone testifying against you because he can't use information he was given when he was their lawyer against them and it would be – so he would have a conflict of interest.  *What's being said [is] if that develops, that conflict, that Mr. Keith Stroud would be your lawyer and would represent you if you went to trial and there was a conflict.*

*Id.* **(emphasis added).**  When asked if he understood, the Petitioner responded that he did understand.  *Id.*  When asked if he agreed to have Mr. Carson represent him and Mr. Stroud at trial if the conflict arose, the Petitioner stated that he agreed.  *Id.*, **at 3-4.**

> At the trial, Mr. Carson continued to represent the Petitioner although both Norman Williams and Gloria Jean Holloway testified for the Government.  Although unclear, it appears that a different attorney cross-examined those witnesses.  However, the Petitioner argues that the failure of Mr. Carson to bring in Mr. Stroud *at trial* was a conflict of interest.

**Memorandum and Order, filed October 18, 2005, at 8.**  There are two

problems: the Magistrate Judge advised the Petitioner that if a conflict of

interest arose, Mr. Carson would not represent the Petitioner at all during trial.

He did not advise the Petitioner that a different attorney would cross-examine

the witnesses.  And, the record discloses that Holloway did testify during the

trial, *albeit* she did not testify about the Petitioner.  **Trial Transcript, Vol. I,**

**filed November 5, 2002, at 90-128.**  She did, however, testify about both the

drug and money laundering conspiracies.  *Id.*  Although the record is devoid of

any indication that she waived the conflict, or that the Petitioner did so,

Holloway was not cross-examined by the Petitioner's trial counsel, Jim Carson.


The record at arraignment makes clear that the condition on which the

Petitioner waived the conflict was that Mr. Carson would withdraw as trial

counsel altogether in the event that either Holloway or Williams were to testify.

**Transcript of Arraignment,** *supra*, **at 3-4 ("If I have to withdraw, I will and**

**he'll be ready to take over.  This is fine with the defendant."  The Court:**

**"And you understand that Mr. Stroud may be your lawyer if you go to**

**trial?").**  Nonetheless, Mr. Carson did not withdraw, and, while he did not

conduct the initial cross-examination of Williams, he did conduct the re-cross-

examination of that witness. **Trial Transcript, Vol. III, filed November 5, 2002, at 126.**

The Petitioner claims that he was impacted by this conflict in the following manners: (1) Mr. Carson failed to secure a plea bargain for him because when making recommendations to the Petitioner, he had to also consider the rights and interests of his previous client, Norman Williams; (2) the attorney who conducted the initial cross-examination of Williams was at a disadvantage because he had not been involved in the case from the beginning and had to rely on Mr. Carson's version of the facts and theory; (3) Mr. Carson did not withdraw as trial counsel, as had been represented during arraignment; therefore, the Petitioner did not make a knowing waiver of the conflict; (4) Mr. Carson should not have conducted the re-cross-examination of Williams; and (5) the Petitioner did not agree to allow Mr. Carson to handle the trial in the event of the conflict. **Petitioner's Brief, filed July 6, 2004.** Mr. Carson has provided an affidavit in which he avers that (1) the Magistrate Judge explained the conflict to the Petitioner who agreed that Carson should represent him; (2) Williams refused to waive the conflict and "stated that he did not want me to cross-examine him;" (3) Keith Stroud was unavailable to cross-examine Williams, nothing is said as to whether Stroud would have been available to

conduct the entire defense; (4) an attorney who "shared offices with Keith Stroud" agreed to conduct the cross-examination; (5) Mr. Carson "thoroughly briefed Jason Reece and everything pertinent to his cross examination of Williams;" and (6) Mr. Carson discussed this arrangement with the Petitioner who "had no objection[.]" The fact that Mr. Carson conducted a re-cross of the witness is not discussed. The other issues raised by the Petitioner also were not addressed.

> Under *Cuyler [v. Sullivan*, 446 U.S. 335 (1980)], prejudice is presumed, and a petitioner is entitled to relief, if he shows that his counsel labored (1) under an actual conflict of interest that (2) adversely affected the representation. To demonstrate an actual conflict, a petitioner "must show that [his] interests 'diverge[d] [from his attorney's] with respect to a material factual or legal issue or to a course of action.'" Even if a petitioner establishes an actual conflict, he cannot succeed on his claim unless he also can show that the conflict adversely affected the attorney's representation, such as when an attorney takes action for one client that is necessarily adverse to another, or when an attorney fails to take action for one client for fear of injuring another.

***Jones v. Polk***, 401 F.3d 257, 267 (4th Cir. 2005) (quoting ***Gilbert v. Moore***, 134 F.3d 642, 652 (4th Cir. 1998)) (other citations omitted). Here, Mr. Carson had previously represented both Holloway and Williams; and, everyone acknowledged that such representation would constitute an actual conflict if either witness testified. The record has not been developed as to the nature of

the charges on which Mr. Carson represented those individuals; however, each

of them testified as to the nature and expanse of the drug and money

laundering conspiracies.  Williams' testimony was particularly damaging to the

Petitioner.  He described the Petitioner as the "best cooker of crack cocaine"

that he knew and testified that the Petitioner was teaching him that process.

**Trial Transcript, Vol. III, at 94-96.**

> "A conflict [of interest] exists when defense counsel places himself
> in a position conducive to divided loyalties."  This question is
> highly fact-sensitive.  Whether a conflict of interest exists depends
> on a number of factors, including, but not limited to, whether the
> attorney has confidential information that is helpful to one client
> but harmful to another; whether and how closely the subject
> matter of the multiple representations is related; how close in time
> the multiple representations are related; and whether the prior
> representation has been unambiguously terminated.
>
> . . .
>
> [T]he record is [not] sufficiently developed to allow [the Court] to
> determine whether [Mr. Carson's] conflict of interest adversely
> affected his performance.

*United States v. Infante*, 404 F.3d 376, 392-93 (5th Cir. 2005) (quoting

*United States v. Medina*, 161 F.3d 867, 870 n.1 (5th Cir. 1998)).  As a

result, a hearing on this issue is necessary.  *Id.*; *see*, *e.g.*, *United States v.*

*Tinsley*, 166 F.3d 336 (table), 1998 WL 801549, **8-9 (4th Cir. 1998)

("Representation by counsel who had represented a significant potential

witness for the Government poses a real risk of conflict, one that might not be eliminated by having co-counsel examine the witness." (citing *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996) ("Nor could that conflict so surely have been avoided by the device of retaining auxiliary counsel for the special purpose of cross-examining[.] . . . After all, Crawley would remain at counsel table and likely be the auxiliary lawyer's chief source of information about the case.")))

As a result, the Court finds that an evidentiary hearing is necessary as to these two issues. Because a hearing is required, court-appointed counsel will represent the Petitioner at that hearing. **Rule 8(c), Rules Governing Motions pursuant to Section 2255 in District Courts;** *United States v. Phillips*, 134 F.3d 365 (table), 1998 WL 48561 *1 (4th Cir. 1998) ("[T]here is no constitutional right to counsel in a § 2255 proceeding" although there is a statutory right if an evidentiary hearing is conducted. (citing *United States v. Vasquez*, 7 F.3d 81, 83 (5th Cir. 1993)))**.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion pursuant to 28 U.S.C. § 2255 is hereby **DENIED** as to every issue raised with the

exception of the issues of (1) whether the Petitioner received ineffective assistance of counsel because counsel failed to join in the *Apprendi* precursor arguments raised by co-counsel; (2) whether the Petitioner received ineffective assistance counsel due to a conflict of interest; and (3) whether, in the event the Petitioner did receive ineffective assistance of counsel, the recent cases of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), should be applied to his case.

**IT IS, THEREFORE, ORDERED** that this matter is hereby scheduled for an evidentiary hearing on **MONDAY, FEBRUARY 27, 2006, AT 10:00 AM**, at the U.S. Courthouse in Asheville, North Carolina.

**IT IS FURTHER ORDERED** that the Federal Defenders Office appoint counsel to represent the Petitioner at this hearing.

**IT IS FURTHER ORDERED** that the United States Marshal make arrangements to have the Petitioner transported from his place of incarceration to the hearing and return him thereto after the hearing has concluded. The United States Marshal shall ensure that the Petitioner arrives in this District prior to the hearing date in order that he may be afforded adequate opportunity to confer with counsel in preparation for the hearing.

**IT IS FURTHER ORDERED** that the Government shall secure the presence of James Carson and Joe Ledford, Attorneys at Law, at such hearing.

**IT IS FURTHER ORDERED** that the Petitioner's conviction and sentence remains intact pending any further ruling on this motion.

The Clerk of Court is directed to send copies of this Memorandum and Order to the Petitioner, the Federal Defenders Office, the United States Attorney, and the United States Marshal.  The Clerk is also directed to furnish copies of this Memorandum and Order to attorneys James Carson and Joe Ledford.

**Signed: December 21, 2005**

Lacy H. Thornburg
United States District Judge