**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL NO. 3:02CV66
(3:97CR22-9)**

| | | |
|---|---|---|
| **IVEY WALKER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** came on for hearing before the Court on February 27, 2006. The Court gave the parties a further opportunity to respond to additional issues raised by Order filed March 3, 2006. Responses having been filed, the Court grants in part the Petitioner's motion pursuant to 28 U.S.C. § 2255.

## I. PROCEDURAL HISTORY

On July 6, 1998, the Petitioner was indicted with one count of conspiracy to possess with intent to distribute and distribution of cocaine, cocaine base, heroin and marijuana, in violation of 21 U.S.C. §§ 846 and

841, and with one count of conspiracy to money launder, in violation of 18

U.S.C. § 1956. On July 10, 1998, the Government filed an information

pursuant to 21 U.S.C. § 841(b) alleging that the drug conspiracy involved in

excess of 1.5 kilograms of cocaine base, in excess of 5 kilograms of

cocaine, and in excess of 1 kilogram of heroin. The information did not

address quantities of marijuana. After trial in September 1998, the

Petitioner was found guilty by jury verdict of both counts. On November

16, 1999, the undersigned sentenced the Petitioner to life imprisonment in

connection with the drug conviction and to 240 months imprisonment in

connection with the money laundering conviction.

Petitioner appealed his convictions and sentences, raising as an

issue the fact that his sentence of life imprisonment was based on a

judicial finding by the undersigned of the quantities of drugs with which the

conspiracy was involved. This finding, he correctly noted, was based on a

preponderance of the evidence, not a jury's finding beyond a reasonable

doubt. Thus, Petitioner argued on direct appeal that *Apprendi v. New

Jersey*, 530 U.S. 466 (2000), should be applied to his case. The Supreme

Court held in *Apprendi* that other than a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory

maximum must be submitted to the jury and proved beyond a reasonable

doubt.  It is undisputed that in the Petitioner's case, this was not done.  In

addressing this issue on Petitioner's direct appeal, the Fourth Circuit Court

of Appeals held:

> "*Apprendi* dictates that in order to authorize the imposition of a
> sentence exceeding the maximum allowable without a jury
> finding of a specific threshold drug quantity, the specific
> threshold quantity must be treated as an element of an
> aggravated drug trafficking offense, *i.e.*, charged in the
> indictment and proved to the jury beyond a reasonable doubt."
> For this reason, as the Government acknowledges, "the
> imposition of sentences above 20 years' imprisonment [on the
> drug conspiracy count] in this case was error."  We thus have
> to determine if this error requires us to grant appellate relief to
> any of the defendants. . . .  If a defendant has made a timely
> and sufficient *Apprendi* sentencing objection in the trial court,
> and so preserved his objection . . ., we must reverse unless we
> find this constitutional error harmless beyond a reasonable
> doubt[.] But if a defendant has failed to make a timely and
> sufficient *Apprendi* sentencing objection and, therefore, failed
> to preserve his objection in the trial court, we can correct the
> forfeited error only if it constitutes "plain error" under Fed. R.
> Crim. P. 52(b).
>                                    . . .
> [C]lose review of the record reveals that, although [Petitioner]
> objected to the presentence report['s] drug quantity
> calculations, [he] never objected to the failure of the jury to find
> a specific drug quantity.  [He] did not invoke *Jones v. United
> States*, 526 U.S. 227 (1999), or any other *Apprendi* precursor.

**United States v. Mackins**, 315 F.3d 399, 405-07 (4th Cir. 2003) (quoting

**United States v. Promise**, 255 F.3d 150,156-57 (4th Cir. 2001)) (other

**citations omitted).** The Fourth Circuit thus concluded that because there was overwhelming evidence of the drug quantities, plain error did not occur because "even if the error here affected . . . Ivey Walker's substantial rights, it does not seriously affect the fairness, integrity, or public reputation of judicial proceedings so as to warrant notice." ***Id.*, at 408.**

The Fourth Circuit also concluded that although the district court erred in failing to sever the Petitioner's case from those counts charging Willie Mackins with a counterfeit check scheme from the drug and money laundering counts, such error was harmless. ***Id.*, at 415.** Finally, the Circuit concluded that because Petitioner did not object to the submission of a general verdict to the jury, error sufficient to be noticed did not occur. ***Id.*, at 415-16.** The Petitioner's petition for a writ of *certiorari* to the Supreme Court was denied. ***United States v. Mackins*, 539 U.S. 950 (2003).**

While the Petitioner's direct appeal was pending, he filed a motion for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 on February 20, 2002. Noting that such motions must be filed in the district of confinement, the motion was dismissed for lack of jurisdiction. **Memorandum and Order of Dismissal, filed July 26, 2002.** Petitioner appealed the

dismissal and the Fourth Circuit agreed that *habeas* petitions must be brought in the district of confinement. **Walker v. Connor, 72 F. App'x 2 (4th Cir. 2003).** Inexplicably however, despite acknowledging the lack of jurisdiction, the Circuit instructed the undersigned to construe the motion as one pursuant to 28 U.S.C. § 2255. **Id.** That was accomplished by Order in compliance with *United States v. Emmanuel*, 288 F.3d 644 (4th Cir. 2002), which provided the Petitioner with an opportunity to elect to have his *habeas* motion construed as one pursuant to § 2255 and to file any amended pleadings related thereto. **Order, filed September 29, 2003.** Petitioner thereafter filed a renewed *habeas* petition, a response to the Order of September 29, 2003, a memorandum of law, a brief, and a motion to amend. **Writ of *Habeas Corpus, ad subjiciendum* (sic), to the Honorable Lacy H. Thornburg, in chambers, filed October 21, 2003; Response to United States District Court Judge Lacy H. Thornburg's Order of September 29, 2003, filed November 10, 2003; Memorandum of points and authorities in support of the petitioner's amended motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255; Brief in support of Defendants (sic) claim of counsel was laboring under conflict of interest that wasn't knowingly and**

**intelligently wavied (sic), filed July 6, 2004; and Motion to Amend under F.R.C.P. 15(A) and (H) along with the proposed Amendment, filed October 8, 2004.** Petitioner's second petition to the Fourth Circuit for a writ of mandamus was denied in August 2004. *In re Ivey Walker*, **103 F. App'x 745 (4th Cir. 2004).**

On September 8, 2005, the undersigned dismissed most of the claims raised by the Petitioner and asked the Government to respond to the remainder. **Memorandum of Decision, filed September 8, 2005.** On December 21, 2005, the undersigned denied the Petitioner's claims for relief based on the following: (1) the jury should have been instructed to determine which conspiracy with which the Petitioner was involved; (2) a single versus multiple conspiracies instruction was not given; (3) the conspiracy count was duplicitous because it charged a conspiracy to distribute more than one type of controlled substance; (4) the jury instruction concerning conspiracy to money launder was defective because the jury was not told to attribute specific conduct to the Petitioner; (5) the Court failed to instruct the jury that their verdict must be unanimous; and (6) the Court failed to poll the jury. **Memorandum and Order, filed December 21, 2005, at 20.** The undersigned reserved ruling on two

issues: whether sentencing counsel was ineffective in failing to join in the *Apprendi* argument made by counsel for a co-defendant; and whether trial counsel suffered under a conflict of interest. ***Id., at 21.*** The Court found that an evidentiary hearing was necessary as to these issues and appointed counsel to represent the Petitioner. ***Id***.

## II. EVIDENCE IN THE RECORD RELATING TO CONFLICT OF INTEREST

On July 15, 1998, Deke Falls was appointed to represent the Petitioner. On July 28, 1998, James Carson filed a notice of appearance after having been retained to represent the Petitioner. On July 30, 1998, Carson appeared with the Petitioner at his arraignment on the superseding bill of indictment. During that hearing, the Assistant United States Attorney (AUSA) advised the Court that Carson had

> a conflict with at least two unindicted co-conspirators. One is a Norman Williams who will testify directly against his client based upon the evidence as we now know it. Another former client of Mr. Carson's is Gloria Jean Holloway. She'll be testifying with regard to the conspiracy. She is not being questioned about Ivey Walker yet. I've informed Mr. Carson that I think these conflicts are insurmountable unless both Gloria Jean Holloway and Norman Williams waive any conflict, in addition to Mr. Walker waiving any conflict. The representation I have from Mr. Carson is that if these become

insolvable or unsolvable conflicts, that Keith Stroud will be the attorney of record for trial[.]

**Transcript of Arraignment before the Honorable Carl Horn, III, United States Magistrate Judge, filed August 28, 2003, at 2-3.** The Magistrate Judge inquired whether Carson worked in the same office as Mr. Stroud and was assured that was the case. ***Id.*, at 3.** The Magistrate Judge then advised the Petitioner as follows:

> [Y]our lawyer represented witnesses, at least one witness and maybe two witnesses against you if you were to go to trail. And obviously Mr. Carson would have a hard time cross examining someone testifying against you because he can't use information he was given when he was their lawyer against them and it would be – so he would have a conflict of interest. What's being said [is] if that develops, that conflict, that Mr. Keith Stroud would be your lawyer and would represent you if you went to trial and there was a conflict.

*Id.* When asked if he understood, the Petitioner responded that he did understand. *Id.* When asked if he agreed to have Carson continue to represent him but with Stroud substituted as counsel at trial if the conflict arose, the Petitioner stated that he agreed to that arrangement. ***Id.*, at 3-4.**

At the trial, Carson continued to represent the Petitioner although both Norman Williams and Gloria Jean Holloway testified for the Government. Holloway testified about the drug and money laundering conspiracies but did not directly implicate the Petitioner. **Trial Transcript,**

**Vol. I, filed November 5, 2002, at 90-131.**  Carson did not cross-examine

Holloway.

Norman Williams also testified at the Petitioner's trial and he did

directly implicate the Petitioner in his testimony.  **Trial Transcript, Vol. III,**

**at 85-128.**  The initial cross-examination of Williams on behalf of the

Petitioner was conducted by Jason Reece, an attorney whom Carson

asked to do so.  ***Id.*, at 116-123.**  The trial transcript reflects that after

further questioning from the AUSA, Carson conducted a re-cross-

examination of Williams.  ***Id.*, at 126-28.**

By the time of his sentencing hearing, the Petitioner had different

counsel representing him, Joseph Ledford.  During the sentencing hearing,

Ledford acknowledged that he

> [was] at some disadvantage in the case in that I was not the
> trial attorney.  And I also have seen Your Honor slap down
> objections to the factual basis [all day], so I'm not going to get
> into an argument with the government as to what their
> perception of the evidence was for a variety of reasons, the
> least of which is I didn't hear it. . . .  I think it would be a waste
> of my time and the Court's time for me to make the exact same
> arguments made previously.

**Sentencing Transcript, filed July 3, 2000, at 3.**  Ledford also did not

raise or join in the *Apprendi* objection made by counsel for Willie Mackins.

## III.  EVIDENCE PRODUCED AT THE HEARING

Carson testified that during the Petitioner's arraignment hearing, the AUSA disclosed that Carson had previously represented two witnesses who would be called at trial, Holloway and Williams.  According to Carson, the Magistrate Judge disclosed this to the Petitioner and advised the Petitioner there was a possibility that Carson would be disqualified, in which event, an attorney with whom he shared an office, Stroud, would take over the case.  Carson also testified that because the Government never moved to disqualify Carson, he never asked Stroud to take over the case.  Carson was of the opinion that it was incumbent on the Government to move to disqualify him.  Carson testified that he discussed this with the Petitioner, advising him that Carson had, in fact, represented Williams several times.  According to Carson, the Petitioner wanted him to stay in the case.  In response to questions as to whether this conflict impacted his ability to negotiate a plea agreement for the Petitioner, Carson testified that the Petitioner was never interested in a plea agreement.  Instead, the trial strategy developed by the Petitioner and Carson was to establish the Petitioner as a rehabilitated drug addict and to impeach the Government's witnesses.

Carson testified that he had a long history of representing Norman Williams, whom he stated always "pled out."  Carson acknowledged that Williams was indicted in federal court in 1997, one year prior to the Petitioner, and recalled that he negotiated a plea agreement on Williams' behalf.[1]  Williams was de-briefed by the Government and received a motion for a downward departure in connection with his assistance. Carson testified that he was surprised when he learned that Williams knew the Petitioner.  Carson represented Williams at his sentencing hearing.

Carson also testified that the AUSA stated she would object if Carson conducted any cross-examination of Williams.  And, while the Petitioner had no problem with Carson doing so, Williams did not want Carson to cross-examine him.  The night before the cross-examination of Williams occurred, Jason Reece met with Carson and they reviewed the case and

---

[1] Williams was, in fact, indicted in *United States v. Williams*, Criminal Case No. 3:97cr180, for conspiracy to possess with intent to distribute controlled substances and entered into a plea agreement with the Government on November 20, 1997.  On June 19, 1998, he was sentenced to 188 months imprisonment, a sentence subsequently reduced to 108 months in November 1999 based on the Government's Rule 35 motion.  Petitioner's counsel introduced as an exhibit during the hearing a copy of that motion which disclosed that the Government made the motion based on Williams' testimony implicating the Petitioner at his trial.  Williams was released from custody in August 2005.

the evidence.  Carson did not divulge any confidential information to Reece which he had received from the Petitioner.  Carson also testified that he was not in possession of any confidential information that would have been helpful to Holloway or Williams but harmful to the Petitioner.  Carson did not represent either Holloway or Williams at the time of the Petitioner's trial.  While Carson admits the record reflects that he conducted the re-cross-examination, the fact is that Reece conducted both the cross-examination and the re-cross-examination.  The record, Carson contends, is in error.  Carson also testified that although nothing was put in writing or on the record during the trial, the Petitioner waived the potential conflict of interest as to Norman Williams.

Carson testified that Holloway was essentially the bookkeeper for the drug conspiracy.  He could not recall when he represented her.

Ledford, who represented the Petitioner at his sentencing hearing, testified that while he did file objections to the quantities of drugs attributed to the Petitioner, he did not discuss with the Petitioner the constitutional issue related to the fact that the jury did not make any findings of drug quantities.  Like most attorneys, Ledford testified, he was stunned when the Supreme Court handed down the *Apprendi* decision.  When asked why

he did not join in the argument made by Aaron Michel, who represented Willie Mackins, Ledford testified that Michel has a reputation for throwing out every possible issue; and, while Michel is a fiercely competitive advocate for his clients, he frequently irritates the judiciary. Ledford also testified that even if he had heard Michel's argument, he would not have joined in it because he would have seen the Court reject it in Mackins' case. Ledford's strategy for the Petitioner's sentencing was to distance him from the other defendants. Although it was not a successful strategy, it was the one he adopted. In addition, Ledford did not believe the Fourth Circuit would embrace *Apprendi* to the extent that subsequently occurred. Ledford also testified that, in his opinion, the Petitioner would maintain his innocence to this day.

The Petitioner testified during the hearing that he first met Carson while he was at the Mecklenburg County jail. At his arraignment hearing, the AUSA advised the Magistrate Judge of the conflict of interest. The Petitioner knew that Carson had represented both Holloway and Williams, but Carson did not tell him the nature of his representation. The Magistrate Judge told him that if he went to trial, then Stroud would be his attorney, not Carson. In fact, at a undisclosed point in time after the arraignment,

Stroud visited the Petitioner in the detention facility and told him that he would be his attorney at trial. On the morning of the trial, Carson was there instead of Stroud and the Petitioner asked Carson why Stroud was not there.

The Petitioner also testified that he provided numerous questions to Carson to be used on cross-examination of Williams. The Petitioner had never seen Reece before he stood up in the courtroom to do the cross-examination. According to the Petitioner, Carson did, in fact, conduct the re-cross-examination of Williams. Carson asked Williams about Robert Jones, a man who had worked with the Petitioner. Jones was a potential witness whom the Petitioner thought would impeach Williams and, despite the fact that the Petitioner asked Carson to bring him in for the trial, that was not done.

The Petitioner testified that during the trial, Ramee Shabazz testified against him. While Carson was cross-examining Shabazz, the witness blurted out that Carson had represented him in the past. A review of the trial transcript shows this to be an accurate rendition of what occurred. **Trial Transcript, Vol. IV, at 39 ("You used to be my lawyer, too.").**

On cross-examination of the Petitioner, it was established that the issue of conflict of interest was addressed during the trial. In fact, the trial transcript shows the following colloquy on September 18, 1998:

Mr. Carson:      If the Court please, I have a similar situation. The witness's name was Shabazz. He said on the witness stand that I had represented him at one time. Frankly, I don't recall it at all. I don't know whether it's because he was under a different name at that time. I have no recollection about it. I have discussed this with my client.

And also my relationship with Ned Johnson, I've never represented him. I represented a co-defendant. And Mr. Walker as been apprised of this and waives any possible conflict there might be and wants to continue with me and you might want to get his statement on the record.

The Court:      Yes, sir. Do you, likewise, represent to the Court that you discussed the matter which your attorney just brought to the Court's attention? And it was your decision, was it, to have him continue in this case?

Ivey Walker:      Continue on, yes.

The Court:      And you are satisfied with this representation?

Ivey Walker:      Yes.

The Court:      And the manner in which he has conducted himself with relation to the witness Shabazz and Ned Johnson, is that satisfactory to you?

Ivey Walker:      Yes, sir.

**Trial Transcript, Vol. IX, at 9-10.**

## IV. DISCUSSION

**A.    The issue of conflict of interest**

The first issue is whether Attorney James Carson rendered

ineffective assistance of counsel because he labored under a conflict of

interest.

> Under *Cuyler* [*v. Sullivan*, 446 U.S. 335 (1980)], prejudice is
> presumed, and a petitioner is entitled to relief, if he shows that
> his counsel labored (1) under an actual conflict of interest that
> (2) adversely affected the representation.  To demonstrate an
> actual conflict, a petitioner "must show that [his] interests
> 'diverge[d] [from his attorney's] with respect to a material
> factual or legal issue or to a course of action.'" Even if a
> petitioner establishes an actual conflict, he cannot succeed on
> his claim unless he also can show that the conflict adversely
> affected the attorney's representation, such as when an
> attorney takes action for one client that is necessarily adverse
> to another, or when an attorney fails to take action for one
> client for fear of injuring another.

*Jones v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005) (quoting *Gilbert v.*

*Moore*, 134 F.3d 642, 652 (4th Cir. 1998) (quoting *Cuyler*, 446 U.S. at

356 n.3)).

> "A conflict [of interest] exists when defense counsel places
> himself in a position conducive to divided loyalties."  This
> question is highly fact-sensitive.  Whether a conflict of interest
> exists depends on a number of factors, including, but not

> limited to, whether the attorney has confidential information that
> is helpful to one client but harmful to another; whether and how
> closely the subject matter of the multiple representations is
> related; how close in time the multiple representations are
> related; and whether the prior representation has been
> unambiguously terminated.

**United States v. Infante, 404 F.3d 376, 392-93 (5th Cir. 2005) (quoting**

**United States v. Medina, 161 F.3d 867, 870 n.1 (5th Cir. 1998)) (other**

**citations omitted).**

As to Holloway, there was no actual conflict of interest because, while she testified about the conspiracy itself, she did not provide any evidence linking the Petitioner to the conspiracy.  In fact, she did not implicate the Petitioner at all.

As to Williams, however, his testimony was damning to the Petitioner, a fact recognized by the Government a year later when it moved for a reduction in sentence based on that testimony.  And, within a matter of weeks, Carson represented Williams on a drug conspiracy charge at his sentencing hearing and then began his representation of the Petitioner.

**Chandler v. Lee, 89 F. App'x 830, 840 (4th Cir.), cert. denied, 543 U.S.**

**913 (2004) (citing Perillo v. Johnson, 205 F.3d 775, 798 (5th Cir. 2000)).**

This successive representation was therefore close in proximity.  **Id.** However, at the time Carson represented the Petitioner, he was

unambiguously no longer representing Williams.  *Id.*  And, Carson testified that he had no confidential information about the Petitioner which was disclosed to Williams or used during cross-examination.  *Id.* **(citing**

***Belmontes v. Woodford*, 350 F.3d 861, 885 (9th Cir. 2003)).**  Nor has there been any showing that the drug conspiracy with which Williams was involved was the same one for which the Petitioner was being tried.

***Perillo, supra*.**  Whether Carson had remained as counsel or not, Williams' testimony would have been damaging.  The cross-examination conducted of Williams by Reece effectively showed Williams' motivation for testifying as well as his past criminal history.  In fact, Reece was able to elicit from Williams that the Petitioner had reformed, had been out of the drug business since 1994, was actively involved in his church and was trying to help young people who had addictions.  **Trial Transcript, Vol. III, at 121-23.**  The Court concludes that there was not an actual conflict of interest.

However, assuming *arguendo* that a conflict did exist, the Court finds that the Petitioner waived it.  "It is well established that, '[A]lthough a defendant may waive his right to conflict-free representation, such waiver must be knowing, intelligent and voluntary."  ***United States v. Brown*, 202**

**F.3d 691, 697 (4ᵗʰ Cir. 2000) (quoting *United States v. Gilliam*, 975 F.2d**

**1050, 1053 (4ᵗʰ Cir. 1992)).**

> However, if a defendant waives the conflict with knowledge of
> the crux of the conflict *and* an understanding of its implications,
> the waiver is valid – even if the defendant does not know each
> detail concerning the conflict.  Thus, even if [the Court] were to
> agree that [the Petitioner] did not know all the facts relating to
> [Carson's] conflict, the record establishes that he clearly knew
> enough to make a knowing, intelligent, and voluntary waiver.

*Id.*, at 698 (footnotes omitted).  At the arraignment, the Petitioner was

made well aware of the potential conflict and agreed that if the conflict

arose, Stroud would represent him at trial.  The record is clear that the

Petitioner agreed with this arrangement.  The issue is whether the

Petitioner's knowing waiver continued when, instead of bringing Stroud in

to try the case, Carson instead brought in a different attorney to conduct

the cross-examination.[2]  The Court finds that this waiver did continue and

that the use of the "auxiliary attorney" was not only appropriate in this

circumstance but effective.  *United States v. Williams*, 81 F.3d 1321,

**1325 (4ᵗʰ Cir. 1996) (citing *United States v. O'Malley*, 786 F.3d 786, 789-**

---

[2] The Court acknowledges Carson's testimony that it was his
understanding that a different attorney would be used for cross-
examination only.  However, the transcript from the arraignment hearing
clearly shows the Magistrate Judge stated that in the event a conflict
arose, Stroud would take over the trial.

**92 (7th Cir. 1986) (approving of the use of a different attorney to conduct the cross-examination where arrangements had been made ahead of time)).**

Moreover, the Petitioner, as noted *infra*, provided an explicit waiver during the trial.  While it is true that the waiver which occurred on September 18, 1999, related to witnesses Shabazz and Johnson, the Petitioner stated that he wanted to continue with Carson as his attorney.[3] Additionally, at the hearing on this motion, the Petitioner testified that he wanted to continue with Carson as his attorney because he believed Carson's strategy would work and that the Government was really only interested in pursuing the Mackins brothers.  The Court finds that the Petitioner made a fully informed, knowing waiver of the conflict of interest and wanted to continue with Carson as his attorney.  ***United States v. Washington*, 46 F. App'x 705 (4th Cir. 2002).**  Because his waiver was valid, it precludes him from raising an issue as to ineffective assistance of counsel in a collateral proceeding.  ***United States v. Lowry*, 971 F.2d 55 (7th Cir. 1992).**

---

[3] The Court does acknowledge, however, that this exchange occurred after Williams had testified.

**B.    The failure to preserve the *Apprendi* issue**

The next issue is whether Ledford was ineffective in failing to join the argument made by counsel for Willie Mackins, an argument which would have preserved for appeal the *Apprendi* issue.  The undersigned has previously noted that an attorney is not ineffective for failing to anticipate a change in law.  ***See, e.g., United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996).**  And, the Court has previously noted that the issue here is not the failure to have anticipated such a change, but the failure to join that argument forecasting that change when it was made by co-counsel.

The Petitioner was sentenced in November 1999.  *Apprendi* was decided seven months later.  At the time that Willie Mackins' counsel made his *Apprendi* precursor argument before the undersigned, *Apprendi* had not been decided.  ***See, e.g., United States v. Roane*, 378 F.3d 382, 397 (4th Cir. 2004), *cert. denied*, 126 S. Ct. 330 (2005).**  It is also undisputed that appellate counsel did raise *Apprendi*.  The issue here is whether sentencing counsel should have joined the argument made by co-counsel. Ledford has explained his reluctance to join in the argument: (1) he knew Mackins' counsel to be a zealous advocate who frequently irritated the judiciary; (2) he did not want to irritate the judge sentencing his client; (3)

he had heard the undersigned deny this argument that same day; (4) his strategy was to distance his client from the Mackins brothers; and (5) the Petitioner continued to maintain his innocence. **Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002) ("[C]ounsel's decision not to raise an issue unsupported by then-existing precedent did not constitute ineffective assistance.").** The undersigned cannot find, based on those reasons, that Ledford was ineffective for failing to join in the *Apprendi* precursor arguments.

**C. Does this case qualify for relief on other grounds**

Title 28 U.S.C. § 2255 provides for relief on the following grounds: (1) the sentence was imposed in violation of the Constitution; (2) the sentence was imposed in violation of the laws of the United States; (3) the Court was without jurisdiction to impose the sentence; (4) the sentence was in excess of the maximum authorized by law; or (5) the sentence is otherwise subject to collateral attack. By virtue of the rulings made in this matter, the undersigned has concluded that the Petitioner's sentence was not imposed in violation of his right to effective assistance of counsel and conflict free representation and the sentencing court had jurisdiction to impose the

sentence. However, the following issues remain: (1) whether sentencing a defendant to a sentence imposed in violation of the laws of the United States or in excess of the maximum authorized by law violates his constitutional rights[4]; (2) whether the Petitioner is entitled to relief because his sentence was imposed in violation of the laws of the United States or because his sentence was in excess of the maximum authorized by law; or (3) the sentence is otherwise subject to collateral attack.

> While the statutory language [of § 2255] is rather general, the Supreme Court has narrowly confined the scope and availability of collateral attack for claims that do not allege constitutional or jurisdictional errors. Such claims are properly brought under § 2255 only if the claimed error is "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." The error must "present exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.". . . The reason for so sharply limiting the availability of collateral attack for nonconstitutional, nonjurisdictional errors is that direct appeal provides criminal defendants with a regular and orderly avenue for correcting such errors.

---

[4] Enhancing a sentence based on facts found by a court alone and not the jury violates the Sixth Amendment imperative that any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by a jury verdict must be proved to a jury beyond a reasonable doubt. **Apprendi, supra.**

***Knight v. United States*, 37 F.3d 769, 772-73 (1st Cir. 1994) (quoting *Hill***

***v. United States*, 368 U.S. 424, 428 (1962)) (other citations omitted).**

Here, on direct appeal, the Fourth Circuit made the following findings: (1)

"[A]s the Government acknowledges, 'the imposition of [a] sentence[]

above 20 years' imprisonment [on the drug conspiracy count] in this case

was error[,]" ***Mackins*, 315 F.3d at 405**; (2) "Although forfeited error [as in

this case] can still provide the basis for reversal on appeal, it must meet a

more exacting standard of review[,]" ***id.***; (3) Where a defendant failed to

preserve the *Apprendi* objection at trial, "we can correct the forfeited error

only if it constitutes 'plain error' under Fed. R. Crim. P. 52(b)[,]" ***id.*, at 406**;

(4) Under that standard, the defendant must bear the burden of proving to

the appellate court that the error was plain, affected his substantial rights,

and should be noticed, ***id.***; (5) The Petitioner made timely objections, orally

and in writing, prior to sentencing to the drug quantities attributed to him

and thus, the objections were timely, ***id.***; (6) The Petitioner did not make

an objection prior to the verdict to the failure of the indictment to charge a

specific quantity of drugs, ***id.***; (7) Willie Mackins, "[a]lthough not artful," did

raise the issue prior to sentencing and thus preserved *Apprendi* error, ***id.*,

at 407**; (8) "In this case, the Government concedes not only that the district

court erred 'by imposing enhanced sentences in the absence of . . . an allegation [regarding specific drug quantities], but also that error was also 'plain' . . . within the meaning of Federal Rule of Criminal Procedure 52(b)[,]'" *id.*, **at 408**; (9) But, the evidence against the Petitioner was of such quantity that "even if the error here affected . . . Ivey Walker's substantial rights," the Circuit declined to notice this plain error because it did not "seriously affect the fairness, integrity or public reputation of judicial proceedings[,]" *id.*; (10) As to Willie Mackins, on the other hand, the error, considered under a different standard, both affected his substantial rights and was not harmless. *Id.*, **at 409.** The Fourth Circuit thus clearly stated that this Court erred in sentencing the Petitioner to life imprisonment. Therefore, the issue is whether, on a collateral proceeding, this Court may rectify that error on any or all of the above grounds.

At the time the Petitioner was sentenced, *Apprendi* had not been decided. By the time of his appeal, it was settled law and was raised on appeal. Although the Government conceded that the error was plain and the Circuit found that the error had affected the Petitioner's substantial rights, it declined to notice the error. However, in considering the case of *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005), the Fourth Circuit

ruled exactly the opposite. *Apprendi* announced a procedural rule of constitutional law, not a substantive one. ***United States v. Morris*, 429 F.3d 65, 69 n. 6 (4ᵗʰ Cir. 2005).** But in *Hughes*, the Fourth Circuit ruled as follows:

> Hughes' sentence exceeded the maximum sentence then authorized by the facts found by the jury alone, in violation of *Booker* [*v. United States,* 543 U.S. 220 (2005)]. However, Hughes raised this issue for the first time on appeal. Because this issue was not advanced in the district court, we review the district court decision for plain error. Notwithstanding the heavy burden that a defendant faces when alleging plain error in sentencing, we conclude that the district court plainly erred in imposing a sentence on Hughes that exceeded the maximum allowed based on the facts found by the jury alone.
>
> . . .
>
> When Hughes was sentenced, any claim that imposition of a sentence greater than the maximum authorized under the guidelines by the facts found by the jury alone would violate the Sixth Amendment was foreclosed by circuit precedent. *Booker* has now abrogated our previously settled law. The error committed by the district court in sentencing Hughes was therefore plain.
>
> "Third, [Hughes] must establish that the error affected his substantial rights, *i.e.*, that it was prejudicial." To demonstrate that the error was prejudicial, Hughes must show that "the error actually affected the outcome of the proceedings."
>
> . . .
>
> The question under the third prong of the plain error analysis is thus whether Hughes has established that the sentence imposed by the district court as a result of the Sixth Amendment violation "was longer than that to which he would otherwise be subject[.]" *United States v. Angle,* 254 F.3d 514, 518 (4ᵗʰ Cir. 2001) (*en* banc). Hughes has made such a

showing. As explained above, the maximum sentence permitted by the jury verdict was 12 months. Unaware of the strictures imposed by the Sixth Amendment, however, the district imposed a sentence of 46 months. We therefore conclude that the error affected Hughes' substantial rights. *Accord, United States v. Promise*, 255 F.3d [at] 160 (holding that an *Apprendi* error resulting in an increased sentence affected the defendant's substantial rights.).

. . .

In sum, *Promise* and *Angle* indicate that the prejudice inquiry in the case of a Sixth Amendment violation under *Apprendi* and its progeny . . . is whether the district court could have imposed the sentence it did without exceeding the relevant Sixth Amendment limitation. If the answer to this inquiry is "yes," as was the case in *Angle*, then the defendant has failed to demonstrate an effect on substantial rights; if the answer is "no," as in *Promise*, the defendant has made the required showing.

. . .

Finally, it remains within our discretion to determine whether the district court error warrants reversal. "Our discretion is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial proceedings." We conclude that exercise of our discretion is warranted here. As a result of a plain and prejudicial Sixth Amendment error, Hughes was sentenced to a term of imprisonment nearly four times as long as the maximum sentence authorized by the jury verdict. There can be no doubt that failure to notice such an error would seriously affect the fairness, integrity or public reputation of judicial proceedings.

**United States v. Hughes**, 401 F.3d 540, 547-48, 550-51, 555 (4th Cir.

2005) (quoting **United States v. Hastings**, 134 F.3d 235, 240, 244 (4th

Cir. 1998)).

This Court is unable to divine any difference between the Petitioner's case and that of Hughes.[5]  The Petitioner's sentence exceeded the maximum sentence authorized by the facts found by the jury alone in violation of *Apprendi*.  He raised the issue for the first time on appeal.  The sentence imposed by the undersigned was erroneous because instead of sentencing him to the statutory maximum of 20 years, he was sentenced to life imprisonment.  The error was plain and affected his substantial rights because the undersigned could not have imposed the life sentence without

---

[5] The undersigned obviously recognizes that *Hughes* was decided pursuant to *Booker.*  Nonetheless, the discussion of the *Hughes* decision of *Apprendi*, *Promise*, and *Angle* as well as the application of the plain error standard, shows that the Fourth Circuit's decision in the Petitioner's case is in conflict with later decisions.  While that conflict stems, in some cases, from the fact that those cases were decided pursuant to subsequent Supreme Court precedent, the substantive law pronounced by the Circuit is equally applicable to the Petitioner's case.  Likewise, the undersigned is aware that when two panel decisions are in conflict, the earlier decision controls until it has been overruled by a subsequent *en banc* decision or Supreme Court decision.  ***See*, *United States v. Thompson*, 421 F.3d 278, 288 n.3 (4th Cir. 2005) (Wilkins, C.J. dissenting) (citing *McMellon v. United States*, 387 F.3d 329, 333-34 (4th Cir. 2004) (*en banc*)), *cert. denied*, 126 S. Ct. 1462 (2006).**  The fact is that while *Mackins* has not been overruled, the Circuit has pronounced *Hughes* as application of law directly in conflict with its decision in *Mackins*. ***See*, *United States v. Smith*, 441 F.3d 254, 283-84 (4th Cir. 2006) (Dever, J. concurring in part and dissenting in part), *petition for cert. filed* (U.S. Jul. 10, 2006) (No. 06-5223).**  The undersigned cites that conflict as a ground for granting the extraordinary relief provided herein.

exceeding the Sixth Amendment limitation. The only difference is that in *Hughes*, without any further explanation, the Circuit stated that there could "be no doubt that failure to notice such an error would seriously affect the fairness, integrity or public reputation of judicial proceedings." ***Id., at 555.*** Yet, in the Petitioner's case, the Circuit held the opposite.

The undersigned finds there has been a violation of the Petitioner's constitutional right not to be sentenced in excess of the maximum sentence authorized by the statute except on facts proved to a jury beyond a reasonable doubt. Just as the undersigned was in error when Willie Mackins was sentenced in excess of the maximum sentence authorized, it was in error in sentencing the Petitioner. The fact that the Fourth Circuit declined to notice the error in the Petitioner's case while noticing it in the case of Willie Mackins is of no moment to the underlying constitutional violation. The Petitioner's sentence was erroneous, the Government concedes it was erroneous, the Government concedes it affected the Petitioner's substantial rights, and concedes that the maximum sentence to which the Petitioner could have been sentenced was 20 years. "In *Apprendi*, the [Supreme] Court held that the Sixth Amendment requires juries to find beyond a reasonable doubt the existence of 'any fact that

increases the penalty for a crime' beyond 'the prescribed statutory maximum.'" ***Booker*, 543 U.S. at 326.**  *Apprendi* "announced the rule of constitutional procedure [that] the jury must decide any fact that increases the penalty for a crime beyond a statutory maximum." ***Logan v. United States*, 434 F.3d 503, 507 (6ᵗʰ Cir. 2006).**  The Petitioner's sentence violated that right.

The Government has not argued that considering *Apprendi* issues in the context of this § 2255 motion is an inappropriate retroactive application of *Apprendi* on collateral review.  *Apprendi* was decided on June 26, 2000. The Petitioner's conviction and sentence became final on June 23, 2003 when the Supreme Court denied his petition for a writ of *certiorari*.  ***Beard v. Banks*, 542 U.S. 406 (2004).**  As a result, *Apprendi* may be considered in this collateral review because it was raised as an issue during the Petitioner's direct appeal.  ***Bousley v. United States*, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal absent certain compelling circumstances bars collateral review); *United States v. Williams*, 67 F. App'x 164 (4ᵗʰ Cir. 2003); *United States v. Boyd*, 43 F. App'x 662 (4ᵗʰ Cir. 2002).**

The Government does argue, however, that the Fourth Circuit's decision on appeal constitutes the law of the case from which the undersigned may not deviate, citing *United States v. Aramony*, 166 F.3d 655 (4th Cir. 1999).

> Under the law of the case doctrine, as a practical matter, once the "decision of an appellate court establishes 'the law of the case,' it 'must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."

**Id., at 661 (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)) (other citations omitted).** The Government has not cited any case holding that the law of the case doctrine applies to this separate civil action brought pursuant to § 2255. Nonetheless, as noted *infra*, the prior decision of the undersigned was clearly erroneous and has worked a manifest injustice. **Agostini v. Felton, 521 U.S. 203, 236 (1997) ("The doctrine [of the law of the case] does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983))).** The Court can perceive of few legal scenarios more manifestly unjust than keeping a man in prison for the rest of his life when

the correct sentence is 20 years imprisonment.  ***Dobbs v. Zant*, 506 U.S. 357, 359 (1993) ("As the Court of Appeals itself acknowledged, its refusal to review the transcript left it unable to apply the manifest injustice exception to the law of the case doctrine, and hence unable to determine whether its prior decision should be reconsidered."); *United States v. Mikalajunas*, 186 F.3d 490, 497-98, 502 (4th Cir. 1999) (Murnaghan, J. dissenting) ("I do not believe that the state's interest in finality outweighs even one year of a man's life[;]" "[T]he issue is whether . . . it is fundamentally unjust to keep a prisoner in jail for one year . . . longer than the correct sentence dictated by the [statute];" "The real issue, though, is whether it is a complete miscarriage of justice to keep a defendant imprisoned beyond the defendant's correct sentence.  I think the answer is clear.").**

But the Court also finds that relief is warranted on the other grounds provided by § 2255, that is, the Court finds that the Petitioner's sentence is the result of a non-constitutional error which involves "a fundamental defect which inherently results in a complete miscarriage of justice" or is "inconsistent with the rudimentary demands of fair procedure."

First, § 2255 provides for relief where "'the *sentence* was in excess of the maximum authorized by law.'" ***Knight*, 37 F.3d at 772 (quoting *Hill*, 368 U.S. at 426-27) (emphasis added).** The nonconstitutional nature of the relief sought does not preclude the Petitioner from seeking relief pursuant to § 2255. ***Logan, supra.*** "Section 2255 extends to relief based on 'laws of the United States.'" ***Id.*** The law at issue here is the penalty provision of 21 U.S.C. § 841. "Indeed, in *Davis v. United States*, 417 U.S. 333, 346 (1974), the Supreme Court held that 'the fact that a contention is grounded not in the Constitution, but in the 'laws of the United States' would not preclude its assertion in a § 2255 proceeding.'" ***Id.*, at 508.**

> The Supreme Court has on four occasions considered whether a particular nonconstitutional, nonjurisdictional claim was properly brought under § 2255. . . . In one of these cases, the Court found that the error did justify collateral attack. *Davis* [*supra*] (subsequent change in substantive law making defendant's former behavior lawful *does* constitute sufficient basis for collateral attack).

***Knight*, 37 F.3d at 773.** "The proper 'fundamental defect' inquiry asks whether the 'defendant stands convicted of 'an act that the law does not make criminal.'" ***Logan*, *supra*, at 509 (quoting *Bousley, supra*, at 620) (other citations omitted).** While *Apprendi* did not make the Petitioner's former behavior lawful, it did make that behavior unpunishable except

according to facts found beyond a reasonable doubt by a jury verdict.  ***Id.,
at 511.***  Here, those facts mandated a sentence not to exceed 20 years
imprisonment.  "The Supreme Court has established that when the
prejudice is so severe as to be fundamentally unjust – *i.e.*, the defendant is
. . . sentenced, when he is actually not guilty of that . . . sentence – a
prisoner need not show cause."  ***Mikalajunas*, 186 F.3d at 498 (internal
citations omitted).**  "[T]he issue is whether . . . it is fundamentally unjust to
keep a prisoner in jail for one year . . . longer than the correct sentence
dictated by the [statute]."  ***Id.***  The Fourth Circuit has held it was a
fundamental miscarriage of justice to require a defendant to serve time
under sentencing provisions of which he was actually innocent.  ***United
States v. Maybeck*, 23 F.3d 888 (4ᵗʰ Cir. 1994); *see also, Graziano v.
United States*, 83 F.3d 587, 590 (2d Cir. 1996) ("[W]e have previously
applied the 'complete miscarriage of justice' standard in the
sentencing context to a defendant's § 2255 challenge to his guilty
plea where the district court had committed a procedural error in
failing to inform the defendant of the possibility of a fine and a special
parole term."); *United States v. Ramey*, 217 F.3d 842 (table), 2000 WL
790959 (4ᵗʰ Cir. 2000) (§ 2255 motion granted where the petitioner was**

**punished for an act which was subsequently determined to be not**

**illegal).**

> If [the Court] do[es] not correct this error, [Petitioner] will serve a term of imprisonment [of life which is] longer than required by the [statute]. [The Court] cannot casually ignore this fact because of an overly-strict adherence to technical requirements. [Y]ears of a man's life is not a trifling thing. No court of justice would require a man to serve . . . undeserved years in prison when it knows that the sentence is improper. The fairness, integrity and public reputation of our judicial system demand that [the undersigned] correct [the Petitioner's] sentence.

*United States v. Ford*, 88 F.3d 1350, 1356 (4th Cir. 1996); *accord, Stone*

*v. Powell*, 428 U.S. 465, 477 n.10 (1976) ("**Even those**

**nonconstitutional claims that could not have been asserted on direct**

**appeal can be raised on collateral review only if the asserted error**

**constituted 'a fundamental defect which inherently results in a**

**complete miscarriage of justice.'" (quoting *Davis, supra*, at 346));**

*Davis, supra* **(holding cognizable under § 2255 a nonconstitutional**

**claim, which had been raised on direct appeal, involving a change in**

**the controlling law of a federal circuit).** As noted by the Fourth Circuit in

*United States v. Bonnette*, 781 F.2d 357, 364 (4th Cir. 1986), a prisoner

may meet "the 'miscarriage of justice'/ 'exceptional circumstances'

standard for nonconstitutional section 2255 motions because of the possibility that he had been convicted under an erroneous interpretation of the law." ***Id.* (citing *Davis, supra*).**  When a defendant is sentenced to a term of imprisonment based on a jury's general verdict, this is "error [that] amounts to a miscarriage of justice that seriously affects the fairness, integrity, or public reputation of judicial proceedings" and constitutes a "complete miscarriage of justice."  ***Ballard v. United States*, 400 F.3d 404, 410 (6th Cir. 2005) (internal quotations and citations omitted).**

The Court is aware that "[a]bsent extraordinary circumstances, a defendant has no . . .  fundamental interest in whether a sentence reflects his . . . relative culpability with respect to his . . . co-defendants."  ***United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995).**  The Court finds the circumstances of the Petitioner's case constitute extraordinary circumstances.  ***Ramey, supra* (Petitioner's § 2255 motion granted because his punishment "resulted in a fundamental miscarriage of justice and presents exceptional circumstances justifying collateral relief[.]").**  This is not a situation, like that in *Bokun*, where a sentence reduction resulted in the sentencing disparity.  Here, the same statutory maximum should have been applied to both Willie Mackins and the

Petitioner.  ***United States v. Joyner*, 170 F. App'x 258, 261 (4th Cir. 2006)**

**("Although Joyner did not object in the district court to the 221-month**

**sentence imposed on Count Two, we agree with the parties that the**

**sentence exceeds the five year statutory maximum provided in 21**

**U.S.C. § 841(b)(1)(D)[.]  The sentence thus constitutes plain error . . .**

**that affects substantial rights, and if failure to correct error would**

**seriously affect the fairness, integrity, or public reputation of judicial**

**proceedings[,]" it must be noticed.); *Brough v. United States*, 2002**

**WL 32157202 (D.R.I. 2002) ("[I]t would be patently unfair and unjust**

**for the same amount of cash to mean one thing in Brough's case and**

**another in Tucker's case."  (quotations omitted)).**  "[T]he plain language

of § 2255 . . . is, after all, phrased in terms of challenges to *sentences*."

***Mikalajunas*, 186 F.3d at 497.**

　　　　Likewise, § 2255 also provides for relief based on any ground that "is

otherwise subject to collateral attack[.]"  **28 U.S.C. § 2255; *Mateo v.***

***United States*, 398 F.3d 126, 136 (1st Cir. 2005) ("'[W]hether on**

**constitutional or grounds otherwise subject to collateral attack, we**

**concur with the district court's recognition of federal habeas**

**jurisdiction.'" (quoting *United States v. Pettiford*, 101 F.3d 199, 201**

**(1st Cir. 1996)).** The fourth prong of § 2255 encompasses other than

constitutional or statutory error. ***See, e.g., United States v. DiRusso*, 548**

**F.2d 372, 374-75 (1st Cir. 1976) (noting that § 2255 is often a vehicle for**

**correcting sentences based upon errors made by the sentencing**

**judge).** There is no doubt but that the issue in this case is a sentencing

error made by the sentencing judge; indeed, the Fourth Circuit has so held.

***Mackins, supra*; *Joyner*, *supra* (citing *Mackins*); *United States v.***

***Graham*, 75 F. App'x 145, 149 n.3 (4th Cir. 2003) ("It is worth**

**emphasizing that it is always error for a district to impose a sentence**

**exceeding the maximum sentence provided in the statute for an**

**indeterminate quantity of the drug in question[.]").** "[I]t would be

patently unfair and unjust for the same amount of [drugs] to mean one

thing in [Willie Mackins'] case and another in [the Petitioner's] case."

***Brough, supra*.** And, as to the error committed by the undersigned, the

Fourth Circuit has noted:

> "[I]n most cases [this] means that the error must have been
> prejudicial: It must have affected the outcome of the district
> court proceedings." Because Hardin did not receive a life
> sentence on any other count, the outcome of the sentencing
> was affected by the error. If the district court had sentenced
> Hardin under the Guidelines . . ., he would have received a
> consecutive term of 84 months imprisonment. For Hardin, who

was twenty-six years old at the time of his sentencing, there is no question that his substantial rights were affected by receiving a consecutive life sentence instead of a thirty-seven year total term of imprisonment[.] . . .  *See United States v. Ford*, 88 F.3d [at] 1356 (holding that the defendant's substantial rights were affected by error increasing his total imprisonment by three years); ***cf. United States v. Mackins*, 315 F.3d [at] 410 (*applying harmless error and holding that a forty-six-year-old defendant's substantial rights were affected by receiving a life sentence when the Guidelines only mandated a sentence of ninety years).***

. . .

The district court here . . . was not required to impose a life sentence. . . .  [A]t no time did the district court indicate that it believed Hardin deserved a life sentence or that it would have imposed a life sentence on another count[.] . . .  Thus, Hardin's substantial rights were affected by the error.  Finally, we consider whether we should notice the error in Hardin's sentencing.  ***We conclude that we should because to require a man to spend his life in prison when under the law he should complete his sentence by age 63 "seriously affects the fairness, integrity or public reputation of judicial proceedings."  We came to the same conclusion in Ford,* [*supra*]*, because "[n]o court of justice would require a man to serve three [or more] undeserved years in prison when it knows that the sentence is improper."***

*United States v. Hardin*, 108 F. App'x 74, 79-80 (4th Cir. 2004) (quoting

*United States v. Olano*, 507 U.S. 725, 734, 736 (1993)) (emphasis

added).  Lest there be any doubt in this case, the undersigned would not

have sentenced the Petitioner to a life sentence but for the drug quantities

argued for by the Government at sentencing.  This Court finds that in

addition to the fact that a complete miscarriage of justice has occurred, the

Petitioner's sentence is otherwise subject to collateral attack.

## V.  ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion for relief

pursuant to 28 U.S.C. § 2255 is hereby **GRANTED IN PART AND DENIED**

**IN PART**.  A Judgment is filed herewith.

Signed: August 14, 2006

Lacy H. Thornburg
United States District Judge